USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

DUSHON FOSTER,

                Petitioner,

      v.

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------X

**MEMORANDUM AND ORDER**

07 Civ. 9269 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Dushon Foster ("Foster" or "petitioner") brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Foster challenges his March 14, 2003 conviction in a jury trial of conspiring to commit assault in aid of racketeering, 18 U.S.C. § 1959(a)(6) (Count 1 of the indictment); assault in aid of racketeering, 18 U.S.C. § 1959(a)(3) (Count 2); and using, carrying, possessing and discharging a firearm in connection with these offenses, 18 U.S.C. § 924(c)(1)(A)(iii) (Count 4). Foster also challenges his August 6, 2003 sentence to 96 months on Counts 1 and 2, to run concurrently, followed by 120 months on Count 4, to run consecutively, for a total of 216 months, or 18 years.

    Foster seeks to set aside his conviction and sentence on the grounds of ineffective assistance of counsel, arguing, inter alia, that trial counsel was defective for failing to call, (or

failing to object to being denied an opportunity to call) the authors of certain investigative reports and co-defendant Paulette McCartha, and that his sentencing counsel was ineffective for failing to object to the sentencing judge's "partial mind."[1]

For the reasons set forth below, Foster's arguments are meritless and his petition is denied in its entirety.

## BACKGROUND[2]

Foster was a high-ranking member of the notorious "Bloods" street gang. Around the summer of 2000, Foster began to date the leader of the "Bloodettes" (female Bloods), Paulette McCartha. In August 2000, McCartha's daughter, a Bloodette named Linda McCoy, was slashed "from her ear to her chin" in a fight on 184th Street and Tiebout Avenue in the Bronx.[3] McCartha was furious, and in a meeting with Foster and Omar Portee, the leader of the East Coast Bloods, she demanded revenge. Foster assured McCartha that he would handle it.

Soon thereafter, some Bloods from Tiebout Avenue, including Frankie Esperanza, who was sixteen years old at the time,

---

[1] Petition at 5.
[2] Unless otherwise indicated, the following facts are drawn from the Petition ("Pet."); Respondent's Memorandum in Opposition to Petitioner's Motion for Resentencing ("Resp't Mem."); the Presentence Investigation Report ("PSR"); the Second Circuit decision in United States v. Foster, 127 F. App'x 537, 539 (2d Cir. 2005); and the record in United States v. Portee, No. 01. Cr. 450 (S.D.N.Y. filed May 7, 2001).
[3] Resp't Mem. 3.

approached McCartha's apartment to make peace with her. Foster stepped out of the apartment, approached Esperanza, and shot him in the face at close range. Esperanza ran to a hospital, and managed to survive with only lost teeth and permanent facial scarring.

Foster was eventually indicted - along with Paulette McCartha and thirteen co-defendants - on a host of charges including conspiracy to commit murder, and attempted murder in aid of racketeering, 18 U.S.C. § 1959(a). After a number of guilty pleas from co-defendants (including McCartha), trial commenced against Foster and three others on June 10, 2002. During the trial, Foster testified that he was not a Blood.[4] The jury convicted all of Foster's co-defendants, but after nine days of deliberation could not reach a verdict as to Foster. This Court declared a mistrial as to Foster. Immediately after the mistrial was declared on August 28, 2002, Foster requested new counsel. His request was granted.

Foster's second trial began on March 3, 2003. Foster did not testify, but during closing arguments Foster's lawyer admitted that Foster was a Blood.[5] On March 14, 2003, the jury found Foster guilty on three counts of a four count superseding indictment, S7 01 Cr. 450 (NRB), but found Foster not guilty on

---

[4] Trial Tr. (Aug. 12, 2002) 6490:24 - 6491:1.
[5] See Sentencing Tr. (Aug. 6, 2003) 16:19 - 17:5.

Count 3, attempted murder in aid of racketeering, 18 U.S.C. § 1959(a)(5).

At Foster's sentencing, on August 6, 2003, this Court determined that Foster's Criminal History Category was IV (having concluded on the basis of U.S.S.G. § 4A1.3 that Criminal History Category III significantly underrepresented the seriousness of Foster's criminal history); and that his Offense Level was 25, based in part on an upward adjustment pursuant to U.S.S.G § 3C1.1 for Foster's obstruction of justice in lying at his first trial when he testified that he was not a Blood.[6] As this Court noted at the sentencing hearing, "[I]t is beyond dispute let alone clear and convincing that Mr. Foster lied when he took the stand at the first trial and denied that he was a Blood. . . . There is no question that perjury is clearly within Section 3C1.1 [of the Sentencing Guidelines]."[7] Based on those findings, Foster's applicable guideline range was 84-105 months on Counts 1-2, to be followed by a mandatory ten year minimum on Count 4 to run consecutively, pursuant to 18 U.S.C. § 924(c)(i)(A)(iii). Foster was sentenced to 96 months on Counts 1 and 2, resulting in a total sentence of 216 months in prison.

---

[6]   Sentencing Tr. 31:6-16.
[7]   Sentencing Tr. 31:6-16; see also Memorandum and Order Denying Defendant's Motion for Resentencing at 10, Dec. 5, 2005 ("Resentencing Order").

4

Foster subsequently appealed his sentence and conviction, arguing, <u>inter alia</u>, that the upward adjustments violated his rights under <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005); and that the admission of certain evidence – McCartha's plea allocution, various taped conversations in which McCartha participated, and testimony from cooperating witness Otis Kelly – violated his Sixth Amendment rights under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

On April 4, 2005, the Court of Appeals for the Second Circuit affirmed Foster's conviction, finding, in relevant part, that while admission of McCartha's allocution into evidence violated <u>Crawford</u>, the error was harmless beyond a reasonable doubt. <u>United States v. Foster</u>, 127 F. App'x 537, 539 (2d Cir. 2005). The Second Circuit also concluded that Foster's sentencing arguments were without merit, but remanded the case to allow this Court to consider whether to resentence Foster in light of the Supreme Court's intervening decision in <u>Booker</u>. On December 12, 2005, this Court issued a Memorandum and Order declining to resentence Foster.[8] Foster appealed, and on September 15, 2006, the Second Circuit again affirmed, holding

---

[8] Memorandum and Order Denying Defendant's Motion for Resentencing at 10, Dec. 12, 2005 ("Resentencing Order")(noting that this Court "would not have sentenced Foster to a different sentence if the Guidelines were advisory.").

that Foster's sentence was reasonable. <u>Foster</u>, 196 F. App'x at 42.

Foster filed the instant habeas petition on October 26, 2007.

## DISCUSSION

### I. Standard of Review

Claims of ineffective assistance of counsel are analyzed under the two-part standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>, a defendant must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. <u>Id.</u> at 687.

Counsel's performance is ineffective only if petitioner "identif[ies] acts or omissions [that] were outside the wide range of professionally competent assistance." <u>Id.</u> at 690. In evaluating a claim of ineffectiveness, "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. The court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's

6

unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001); United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990).

The Strickland test applies to appellate as well as trial counsel. Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). Under this standard, counsel is not obliged to raise on appeal "every nonfrivolous argument that could be made." Id. Appellate counsel is considered ineffective only when he omits "significant and obvious issues while pursuing issues that were clearly and significantly weaker." Henderson v. Mayo, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).

## II. Analysis

### A. Counsel's Failure to Investigate and Call as Witnesses the Authors of Investigative Reports

Construing Foster's petition liberally, his first contention is that his trial counsel was ineffective for (i) failing to object to the court's denying defendant the opportunity to call as witnesses the authors of certain investigative reports; and (ii) failing adequately to investigate the names of these authors so that they could be

called as witnesses. Foster suggests that calling these witnesses would have impeached Esperanza's "inconsistent statements."[9]

The first claim is clearly meritless. Not only does Foster fail to indicate what testimony or which authors of which reports would have contradicted Esperanza's testimony, but moreover he fails to identify anywhere in the record where this Court denied his request to call a witness.

The second claim also fails because Foster fails to demonstrate that his counsel's decision not to investigate the names of the authors of any reports was unreasonable. Foster offers, at his most specific, that the authors of "each and every report . . . could have revealed that what was written in those reports were [sic] in fact Mr. Esperanza's words. . . . [which] would have been used to weigh against Mr. Esperanza's testimony."[10] Foster does not elaborate on the nature of the alleged inconsistency, nor its relevance, nor, since such evidence would have been hearsay, under which hearsay exception such testimony would have been admissible. Moreover, Foster and his counsel obtained the reports themselves,[11] so even without

---

[9] Petition at A3.
[10] Reply at 1.
[11] Foster acknowledges that he and his counsel had the reports. Foster merely alleges that "[my] attorney did not use due diligence to obtain the redacted names of all who authored investigative reports in the matter of Mr. Esperanza once the Court would not move the government to turn over the names of all who authored a report." Reply at 1.

ascertaining the names of the authors, the substance of what was in the reports was available for impeachment. Under Strickland, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 690-91. Given that Foster had access to the reports, and that he cannot demonstrate any specific benefit the authors' testimony would have conferred, it is clear that counsel was not unreasonable in failing to pursue the names of the authors.

**B. Counsel's Failure to Call Paulette McCartha**

Foster next contends that the prosecutor intentionally "blocked" McCartha from testifying, and that his counsel was ineffective for failing to object or failing to call her. Foster also contends that counsel's failure resulted in his rights under Crawford being violated by the introduction of McCartha's plea allocution and her recorded conversations with informants.

Foster has submitted, along with his petition, an affidavit from McCartha in which she implies that neither she nor Foster had anything to do with the shooting of Esperanza, and that McCartha only told others that Foster did the shooting in order

to bolster his reputation and ensure her family's safety.[12] McCartha also avers that she wanted to testify at trial on Foster's behalf, but felt she could not because her lawyer told her that if she did she would "receive alot [sic] more time."[13]

Foster's arguments are factually and legally dubious. As an initial matter, there is no evidence that McCartha was coerced into not testifying at Foster's trial. McCartha clearly asserted her Fifth Amendment right not to testify both during her plea allocution, and in a subsequent letter to Foster's counsel.[14] Neither McCartha nor Foster allege that McCartha was threatened with any additional charges if she did testify, or that this Court prevented her from testifying.

Moreover, McCartha's assertion of her Fifth Amendment right not to testify appears to have been in her best interest. McCartha's newly proposed testimony directly contradicts her plea allocution, in which she admitted that she told a co-conspirator to take revenge by shooting a Tiebout Avenue Blood.[15] Thus, had McCartha testified to the contents of her affidavit under oath, she would have been exposing herself to perjury charges.

---

[12] McCartha Aff. ¶¶ 5-7.
[13] McCartha Aff. ¶ 8.
[14] Plea Tr. (April 15, 2002) 13:9-15; Letter from Winston Lee, attorney for Paulette McCartha, to Roger L. Stavis, attorney for Dushon Foster (Mar. 3, 2003) (on file). Counter to Foster's claims, McCartha's plea agreement did not prevent McCartha from testifying - it only dictated that she "inform the Court whether, if called as a witness . . . she would assert her Fifth Amendment right to refuse to testify." Plea Agreement 3, April 7, 2002.
[15] Plea Tr. 25:17-24.

Further, we note that even if McCartha had been available to testify a decision not to call McCartha would not have constituted ineffective assistance of counsel. McCartha, as Foster's girlfriend, was an interested witness, who, as noted supra, would have needed to commit perjury to help Foster's case. Given the strength of the government's case and the testimony of other witnesses, it is unlikely that such testimony would have materially affected the outcome.[16] Similarly, any suggestion that Foster's appellate counsel was ineffective in failing to present McCartha's affidavit on appeal is also meritless. McCartha's affidavit was signed well after Foster's and McCartha's convictions, is clearly self-serving, is directly contrary to McCartha's plea allocution, and rests on McCartha's statements in her recorded conversation with co-operating witness Kelly being out-and-out lies. Thus, the McCartha affidavit does not provide a viable basis to challenge appellate counsel's judgment.

Finally, we address Foster's suggestion that his counsel's failure to call McCartha resulted in his rights under Crawford being violated by the introduction into evidence of McCartha's plea allocution and recorded conversations McCartha had with informants. This argument is procedurally barred. On appeal,

---

[16] As the Second Circuit has already held, the strength of the Government's case rendered the admission of McCartha's plea allocution harmless beyond a reasonable doubt. Foster, 127 F. App'x at 539.

the Second Circuit expressly considered both of Foster's Crawford arguments, and found that the introduction of McCartha's plea allocution was harmless beyond a reasonable doubt, and that the introduction of recorded conversations was not a Crawford violation. See United States v. Foster, 127 F. App'x 537, 539 (2d Cir. 2005). It is "well established" that a Section 2255 petition "cannot be used to 'relitigate questions which were raised and considered on direct appeal'". See, e.g., United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)); United States v. Becker, 502 F.3d 122, 127 (2d Cir. 2007).

### C. Foster's Contention As to "Bias"

Lastly, Foster contends that his counsel was ineffective for failing to object to the sentencing Court's "personal bias or prejudice" against Foster, which he claims violated his right to a fair trial. Foster's assertion of bias rests exclusively on his assessment of this Court's upward adjustments at sentencing, which he contends were the result of "personal bias." He specifically references the labeling of him as a "liar." But Foster's conviction at his second trial, along with his own lawyer's admission during the second trial that he was a Blood provide clear support for the conclusion that his

testimonial denial during his first trial was perjurious.[17] Thus, it was appropriate to upwardly adjust Foster's offense level under U.S.S.G. § 3C1.1.[18] Foster's sentence has been reviewed twice by the Second Circuit and affirmed. See Foster, 127 F. App'x at 539; Foster, 196 F. App'x 42, 42 (2d Cir. 2006). In sum, Foster's claim of bias is no more than an effort to relitigate his sentence.

## CONCLUSION

For the foregoing reasons, we deny in its entirety Foster's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C § 2255. As Foster has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not issue. See 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

Dated:   New York, New York
         July 14, 2008

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[17] The finding that Foster lied did not need to be put before the jury, because Foster's sentence (216 months) was below the statutory maximum for the crimes for which the jury convicted him (225 months). See United States v. Booker, 543 U.S. 220, 259 (2005).

[18] See U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(f) (1998). Obstruction of justice applies to a defendant "providing materially false information to a judge or magistrate."

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Petitioner Pro Se

Dushon Foster
50382-054
U.S.P. Atlanta, P.O. Box 150160
Atlanta, GA 30315

Counsel for Respondent

Elizabeth F. Maringer
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007